UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE MORRIS,

    Plaintiff,

v.

CURVES INTERNATIONAL, INC.,

    Defendant.

No. 17 CV 3087

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacqueline Morris entered into a franchise agreement with defendant Curves International, Inc. Curves terminated the agreement, claiming Morris violated it by abandoning her franchise. Morris brings breach of contract and fraud claims against Curves, and Curves brings breach of contract counterclaims against Morris.[1] Curves now moves for summary judgment on all claims and counterclaims. For the reasons explained below, the motion is granted in part, denied in part.

**I.   Legal Standards**

Summary judgment is granted if there is no genuine dispute as to any material fact and the party making the motion shows that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, Curves can defeat Morris's claims and succeed on its own counterclaims without a trial if it shows that there is no disagreement about the important facts and that it should win based on its written

---

[1] This court has subject-matter jurisdiction over the claims because Morris and Curves are citizens of different states (Illinois and Texas, respectively) and the amount in controversy is over $75,000. 28 U.S.C. § 1332(a); [43] ¶¶ 1–3.

argument about the law. *See* Local Rule 56.2. If no reasonable jury could look at the evidence and decide in favor of Morris, then there is no genuine dispute as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because Curves makes the motion, it bears the burden of showing that no material facts are genuinely disputed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Morris must provide evidence to establish every element of her claims for breach of contract and fraud. *See id*. at 322–23.

## II. Background

### A. Local Rule 56.1

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of undisputed material facts and support each fact with a citation to evidence in the record. If the stated facts are not properly supported, I disregard them. *See Bryant v. Bd. of Educ., Dist. 228*, 347 Fed.App'x 250, 253 (7th Cir. 2009). Many of Curves's asserted facts are supported by citation to an affidavit from Ronnie Glaesmann, the president and treasurer of Curves. [43-1].[2] Morris asks, "[w]ho is Ronnie Glaesmann, his title and the relationship he had with the plaintiff and Curves[?]" [45] at 16. Although Glaesmann's title and role with Curves is apparent from his affidavit, Morris's question raises an important point. "An affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify

---

[2] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings, except for references to Morris's deposition, [43-2], in which I use the transcript's page numbers.

2

on the matters stated." Fed. R. Civ. P. 56(c)(4). Glaesmann's affidavit does not declare that his statements are based on his personal knowledge or otherwise explain why he is competent to testify to them, so I cannot credit the affidavit or the facts that rely on it.

Curves points out that Morris does not properly dispute any of its facts. Morris states that certain facts are "disputed" but does not point to specific pieces of evidence to support her position, which is not the right way to dispute facts. *See* Local Rule 56.1. Nor does she submit her own numbered list of additional facts. Even though Morris is pro se, I am entitled to require strict compliance with the rules. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016). Nevertheless, courts ordinarily grant pro se plaintiffs some leeway in responding to summary judgment filings. *See Conner v. Vacek*, No. 17 C 7299, 2019 WL 247535, at *2 (N.D. Ill. Jan. 17, 2019).

Because neither party strictly complied with the rules, I turn to a few key documents in the record when necessary to resolve disputes identified in the briefing. But where the basis of the dispute over a fact is not clear, I will not go combing through the record to search for one. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" (citation omitted)). For example, Morris says she disputes Curves's stated fact that she entered into the renewal agreement, without providing any further explanation. [43] ¶ 12; [45] at 16.[3] I will

---

[3] Curves provides a signed copy of the agreement, [43-4], and Morris testified at her deposition that she did renew her franchise agreement in 2012, [43-2] at 28:23–29:1, and in fact relies on that agreement to form the basis of her breach of contract claims.

3

not consider that fact to be in genuine dispute, since Morris has not clearly stated what it is that she disputes.

**B. Facts**

Curves licenses its brand to franchisees who operate fitness studios. [43] ¶ 5. In 2002, Morris began operating a Curves franchise, pursuant to a franchise agreement. [43] ¶ 6. When that agreement expired in 2012, she entered into a renewed franchise agreement. [43] ¶ 12. The agreement required Morris to operate her franchise for five years. [43] ¶ 15. Morris agreed to pay certain fees—like a monthly royalty fee and a monthly advertising fee—during the duration of the agreement. [43] ¶¶ 19–20. Later that same year, an investor acquired a majority interest in Curves. [45] at 34, 282. In March 2014, Morris executed a promissory note for $16,080.94 to buy equipment. [43] ¶ 26.[4]

In January 2016, Curves notified Morris that it "received information" that she was "considering" closing her franchise and told her that doing so would be a breach of the franchise agreement. [43] ¶ 31; [45] at 188. The following month, Curves received an email purporting to be from Morris that said Morris's franchise was closed "[d]ue to a series of unfortunate events." [43] ¶ 32; [45] at 197. Morris denies sending

---

[4] Morris disputes this fact, arguing that she never received a copy of the note and "questioning" the address that appears on the document. [45] at 16. Curves points to a copy of the promissory note that seems to bear Morris's signature. [43-5]. Morris does not argue that she did not agree to and sign the note. At her deposition, Morris testified that she did not remember whether she signed the March 2014 promissory note, [43-2] at 68:21–24, but that she did sign a promissory note and Curves did loan her the amount listed on the March 2014 note so she could purchase equipment. [43-2] at 70:2–3, 70:19–71:2. Morris has not provided evidence that could allow a reasonable jury to conclude that she did not agree to and sign the promissory note.

4

the email. [45] at 17. Curves then sent Morris a formal termination letter, informing her that she no longer had the authority to operate a Curves franchise. [43] ¶ 33; [45] at 308–310. At around that time, Morris's access to the Curves computer system was revoked. [43-2] at 73:19–74:19.

Later that year, Morris sent a letter to the Illinois attorney general complaining of Curves's actions. [45] at 33. Curves responded to the attorney general with a letter explaining its position on Morris's allegations. [45] at 32–38.

## III. Analysis

### A. Morris's Claims

#### 1. *Breach of Contract*

To succeed on a breach of contract claim under Illinois law, Morris must prove: "(1) the existence of a valid and enforceable contract, (2) she substantially performed the contract, (3) [Curves] breached that contract, and (4) damages resulted from the alleged breach of contract." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).[5] Curves argues that Morris has not proven that it breached the franchise agreement.

##### a. Nondisclosure of Acquisition

Morris argues that Curves breached the franchise agreement by not disclosing an investor's impending acquisition of Curves equity before she agreed to renew her

---

[5] Though the franchise agreement states that it is governed by Texas law, [43-4] at 48 (§ 21.C), Curves applies Illinois law (and Morris does not argue against it). The elements of the claims are the same under both states' laws, so the outcome would be the same either way. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (breach of contract); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (fraud).

5

contract. She points to language in the franchise agreement providing that: "This agreement is not effective until and unless franchisee has been furnished by Curves with all disclosure documents, in written form, as may be required under or pursuant to applicable law, for requisite time periods." [43-4] at 51 (§ 22.O). In other words, the agreement required Curves to give Morris only the disclosure documents that it was required to give her by law.[6] But Morris has not shown that the law required Curves to give her documents disclosing the impending transaction. For that reason, she has not shown that Curves breached the franchise agreement by failing to disclose the acquisition.[7]

      b.     Termination

Morris also argues that Curves breached the franchise agreement by terminating it and locking her out of its system based on an unsubstantiated rumor and forged email and without affording her the opportunity to cure any breach. Curves terminated the agreement under § 18.A, which allows it to terminate the agreement without giving Morris an opportunity to cure if Morris abandons the franchise without consent. [43-4] at 41–42.[8] Abandonment includes the "cessation of

---

[6] Curves does not argue this, but even if the law required Curves to give Morris a document disclosing the impending acquisition, its failure to do so would not breach the franchise agreement. The plain language of the agreement provides that under those circumstances, the agreement would not be effective—meaning it would not bind Morris or Curves.

[7] Curves alternatively argues that it disclosed the impending acquisition in the franchise disclosure document that Morris admits she received, [42] at 5, but Curves has not provided evidence demonstrating that the document disclosed the acquisition.

[8] Morris also references § 18.B, which is a different termination provision that does require Curves to provide Morris with an opportunity to cure the default. [43-4] at 43. But that is not the termination provision at issue here, because Curves terminated the agreement under § 18.A.

6

operation" without consent but does not include cessation if it is "due to circumstances beyond Franchisee's reasonable control . . . and Franchisee diligently undertakes to resume operations after the reason for such cessation has been abated." [43-4] at 42. The termination becomes effective when notice is delivered to Morris's address listed on the agreement or her last home address that she notified Curves of in writing. [43-4] at 41.

One key factual issue is whether Morris abandoned her franchise. Curves relies on an email that it says it received from Morris, confirming that her franchise was closed. Curves does not provide a copy of that email and points to the inadmissible Glaesmann affidavit. [43] ¶ 32. Curves quotes the email in full in its brief (without citing where it came from), [42] at 6, and it matches the language in an email that Morris submitted with her brief. [45] at 197. Morris argues that she did not write the email and that it is a forgery, [45] at 17, and she testified to that at her deposition. [43-2] at 77:17–24. Curves does not respond to Morris's argument about the email's authenticity, other than to say that it just one of Morris's "personal beliefs" and not a factual statement. [46] at 4. Morris's testimony that she did not write the email is not just a "belief"—it is admissible evidence of a fact, and a reasonable jury could believe her. Morris further testified that she did not voluntarily close her franchise but rather was forced to close when Curves terminated the agreement and locked her out of its system. [43-2] at 73:20–74:11. Because whether Morris abandoned her franchise is disputed and a reasonable jury could find either

way, Curves's motion for summary judgment on the breach of contract claim is denied.

Another issue is whether Curves complied with the termination provision's notice requirement. Morris argues that the termination letter was sent to the wrong address. [45] at 15. The franchise agreement requires notice to be sent to the address listed on the agreement or Morris's last known address. [43-4] at 41. The address listed on the agreement is one in Crown Point, Indiana, [43-4] at 11, but the termination letter is addressed to South Holland, Illinois, [45] at 308, where Morris says she has not lived since 2003. [43-2] at 11:15–16. So even if Curves had proven that Morris abandoned her franchise and that it was entitled to terminate the agreement, it has not shown that it complied with the notice requirement.

### 2. Fraud

To prove fraud, Morris must show that (1) Curves made a false statement of material fact; (2) Curves knew the statement was false; (3) Curves intended the statement to induce Morris to act; (4) Morris relied on the statement; and (5) Morris was damaged by her reliance on the statement. *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018) (citing *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996)). Morris points to several different statements from Curves to support her fraud claim, but they boil down to two categories—statements that Curves made about Morris in its letter to the attorney general and statements Curves made to Morris about payments she owed.

The statements that Curves made in its letter to the attorney general were not fraudulent. Morris contends that the statements in the letter were lies, but common-

8

law fraud is something more than a false statement—it is a knowing lie that is told to cause someone to do something in response and that is successful in doing so. Morris has not shown that Curves's statements were false or, if they were, that Curves knew they were false; but even if she had, she has not shown that Curves intended for Morris to rely on its statements in the letter or that she did rely on them.

Curves's statements to Morris about payments she owed do not support a fraud claim for many of the same reasons. It is not clear from Morris's submissions that she did not in fact owe those payments, but even if Curves was wrong and she did not owe them, there is no evidence to suggest that Curves knew that. To take just one example, Morris alleges that Curves lied to her in a November 2015 email when it said she owed two equipment payments. [45] at 159. Morris points to an email from a few months earlier when a different employee listed some payments she owed and said she would draft the items from Morris's bank account. [45] at 178. Morris believes this is proof that she paid the charges and that it was fraudulent for Curves to later say she still owed them. But the email does not show that Morris did not in fact owe the payments (maybe Curves never followed through on drafting them) and, even if she had already paid, it does not show that the later request was an intentional lie as opposed to a mistake or misunderstanding.[9]

No reasonable jury could find in favor of Morris on her fraud claim, so Curves is entitled to summary judgment on it.

---

[9] Nor is it clear that the two emails are referring to the same payments, since the first one does not date the payments.

### B. Curves's Counterclaims

Curves's counterclaim for breach of the franchise agreement is based on Morris's abandonment of her franchise. But, as I explained above, whether Morris abandoned her franchise is a disputed question, so summary judgment is denied on the counterclaim for the same reasons it was denied on Morris's breach of contract claim.

Curves also alleges that Morris breached the March 2014 promissory note by failing to make the required payments. Curves relies only on the inadmissible Glaesmann affidavit to prove that Morris owes $8,677.70 on the note, [43] ¶ 35, and I see no other support in the record, so Curves has not established that Morris breached the promissory note and it is not entitled to summary judgment on the claim.

### IV. Conclusion

Curves's motion for summary judgment [41] is granted in part, denied in part. Morris may pursue only her claim that Curves breached the franchise agreement by terminating it. Summary judgment is granted on Morris's other claims and denied on Curves's counterclaims. A status hearing is set for March 21, 2019 at 9:30 a.m.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: February 25, 2019